UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ALAN N. KNOWLTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:09-cv-00334-JAW |
| JUDITH SHAW, et al., | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

On June 13, 2011, the Court issued a seventy-nine page opinion in which it granted in part and denied in part the Defendants' motion for summary judgment. *Order Granting in Part and Denying in Part Defs.' Mot. for Summ. J.* (Docket # 68) (*Order*). Disappointed they did not get everything they were seeking, the Defendants quickly filed a motion for reconsideration, asserting that the Court committed multiple "manifest error[s] of law." *Defs.' Mot. for Recons. of Mot. for Summ. J. Ruling* at 1 (Docket # 69) (*Defs.' Mot.*). First, the Defendants claim that despite its exhaustive Order, the Court gave short shrift to their contention that the misrepresentation claim must be summarily dismissed. *Id.* at 2-3. Second, they assert that the Court committed obvious error in allowing the punitive damages claim to proceed. *Id.* at 3-6. Third, they complain that the Court misapplied its own local rule. *Id.* at 3 n.1. Well satisfied with the parts of the Order he won, the Plaintiff defends it. *Pl.'s Reply to Defs.' Mot. for Recons. of Mot. for Summ. J. Ruling* (Docket # 73) (*Pls.' Opp'n*). In reply, the Defendants reiterate their

complaints. *Defs.' Reply to Pl.'s Reply to Defs.' Mot. for Recons. of Mot. for Summ. J.* (Docket # 74) (*Defs.' Reply*). The Court is unmoved.

## I. MISREPRESENTATION

The Defendants are perturbed that, in ruling on their motion, the Court did not parse each asserted misrepresentation and resolve each statement in their favor. They say the First Circuit requires no less of each trial judge; they assert that, on pain of manifest legal error, in order to properly appraise any motion for summary disposition of a misrepresentation claim, the district court must hold each statement up, expressly examine it, and explicitly discuss its contours, its context, and its supposed misrepresentational quality, and then move studiously to the next dissection. Otherwise, the Defendants claim, the Court is not doing its job and is manifestly wrong.[1]

The Court disagrees. The Defendants rely on *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 42-43 (1st Cir. 2005) for the proposition that, in a misrepresentation claim, the Court must expressly analyze each individualized statement when it rules on a motion for summary judgment. On this point, *Plaut* was critical of appellant having "presented its challenge to these rulings at so high a level of generality, and in such an all-or-nothing manner, as to render any

---

[1] Before the lawyers can insist the Court do its job, they must do theirs. At a minimum, if they seek a dispositive ruling based on undisputed facts, they must present the Court with facts that are undisputed. Here, to the contrary, the lawyers handed the Court a messy, contentious, and undifferentiated pile of evidence complete with countless quibbles, denials, disputes, and equivocations. Combined they proposed 130 statements of undisputed material fact of which they jointly admitted a grand total of 16. The Court resisted the temptation to dismiss the entire matter and to tell them to return to Court with a more orderly motion. Ironically, Bankers Life now complains about the Court's arduous attempt to create a semblance of order out of their chaos.

2

individualized assessment of each of the magistrate judge's specific rulings an exercise in guesswork." *Id.* at 42. It emphasized the need for counsel to make a specific, not general argument, since "[s]uch an individualized assessment of the various statements is critical, as the various representations are of different types and were made at different times, and some could conceivably qualify as actionable under the relevant legal standards while others may not." *Id.* at 42-43. The First Circuit maintained its often-repeated admonition to counsel that the failure to present more than a perfunctory argument amounts to a waiver. *Id.* at 43. The *Plaut* opinion is consistent with a long line of First Circuit caselaw that warns litigants that an undeveloped argument is no argument at all, a principle especially applicable to misrepresentation claims.

The Court is not convinced that the First Circuit's admonition to counsel is also an appellate warning to trial judges about the absolute need to engage in recipe jurisprudence. More specifically, the Court does not read *Plaut* as directing the trial courts that, in denying a motion for summary judgment on a misrepresentation claim, the failure to make a similar detailed checklist explanation of a denial amounts to reversible error.

Be this as it may, the Court will do as the Defendants wish and explain its denial of their motion more thoroughly. To begin, taking the facts in the light most favorable to the Plaintiff, the Defendants played a brazen and dishonest double game with a loyal and productive employee, a scheme that itself was built on a fundamental misrepresentation: the Defendants knew that Alan Knowlton was not

3

involved in the scheme to defraud Bankers Life customers in Maine but they also knew that senior state of Maine bureaucrats who were fully capable of causing significant economic damage to Bankers Life were out to get him. The higher ups at Bankers Life knew that Mr. Knowlton had done nothing wrong and there was no legally justifiable reason to terminate or even transfer him; yet, they made the conscious decision to placate the vindictive state officials by handing up Mr. Knowlton, firing him from his Maine position, and transferring him to an imaginary job in Boston, Massachusetts, where they knew he was doomed to failure, and thus could be justifiably axed. During this unseemly process, the Bankers Life officials made repeated misrepresentations to Mr. Knowlton in an effort to play on his sense of company loyalty, to take advantage of his naïve belief that they were telling him the truth, and to ultimately unload him, a man who had—through no fault of his own—become a liability to Bankers Life. This in sum is Mr. Knowlton's complaint against Bankers Life, a complaint that resonates in a multi-layered series of misrepresentations.

In their motion, the Defendants highlight the statement that Mr. Knowlton says it made to him to encourage him to take the Massachusetts job: that the position represented a "great opportunity for him in Massachusetts to build a Branch Sales Office on the North Shore." *Pl.'s Statement of Additional Material Fact* ¶ 100 (Docket # 62); *Defs.' Resp. to Pl.'s Statement of Additional Material Fact)* ¶ 100 (Docket # 67). The Defendants insist that "the alleged statement that Bankers Life had a 'great opportunity' for Plaintiff in Massachusetts clearly

constitutes 'puffery,' which is not actionable fraud." *Defs.' Mot. to Recons.* at 2. They cite *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 65 (1st Cir. 1992) for the proposition that puffery cannot constitute misrepresentation. *Id.*

*Schott*, however, is a markedly different case. In *Schott*, a failed motorcycle dealership sued American Honda Motor Co., Inc., claiming that Honda had "reduced its commitment to the motorcycle market after its representatives had promised otherwise." *Id.* at 60. The dealer pointed to statements from Honda that it "would continue to be just as committed to the motorcycle market as it had been in the past in terms of support for dealerships and advertising" and that despite the loss of the Harley Davidson and golf cart businesses, "the products that Honda was coming forward with, including motorcycles, scooters and other products would definitely cause an increase in sales over previous years." *Id.* at 65. The First Circuit concluded that these general statements were "nothing more than 'puffing' or 'trade talk,' upon which no reasonable person would rely." *Id.*

The *Schott* Court itself differentiated between business projections subject to uncontrollable economic influences and "fraudulent misrepresentations of past or existing facts on which plaintiff justifiably relied to its detriment." *Id.* (quoting *Kelly Tire Serv. Inc. v. Kelly-Springfield Tire Co.*, 338 F.2d 248, 253 (8th Cir. 1964)). The difference here is apparent. Mr. Knowlton says that Bankers Life's decision to transfer him to Boston was part of a cynical plot to remove him from the state of Maine where he had become a problem, place him in unfamiliar territory where he

5

was sure to fail, and fire him when he did. In that context, the statement that Massachusetts was a "great opportunity" and that he had the chance to build a "branch office" were, arguably, not mere puffery about future events but affirmative statements about existing facts, which were false and upon which a reasonable person would justifiably rely.

A second aspect of a "puffery" analysis is the relative positions of the parties and "the opportunity afforded for an investigation and the reliance." *Plaut*, 399 F.3d at 43 (quoting *Veilleux v. Nat'l Broadcasting Co.*, 206 F.3d 92, 120 (1st Cir. 2000)). Here, Bankers Life was dealing with its employee, not a competing or independently viable business, and it was making representations about matters uniquely within its control to a person whose job was on the line.

The Defendants go on to say that even Mr. Knowlton admitted that the statement was true. *Id.* (citing *Defs.' Statement of Material Fact* ¶ 54 (Docket # 60)). This assertion, like so much of this motion, is clouded in confusion. In its Statement of Material Fact 53, Bankers Life made the following assertion:

> Mr. Knowlton alleged in the amended complaint that Mr. Buckley represented to him that Bankers Life had a great employment opportunity for him in Massachusetts.

*Defs.' Statement of Material Fact* ¶ 53 (Docket # 60) (DSMF). Bankers Life then asserted:

> Mr. Knowlton admitted in his deposition, however, that this statement was true.

*Id.* ¶ 54. Mr. Knowlton's identical responses to these statements were non-responsive:

6

> Qualified. The Consent Agreement between Bankers Life and the State of Maine that indicates that Mr. Knowlton is an incompetent and dishonest person continues to be published by the Defendants and the State of Maine (Exhibit L, Knowlton Dep. at 208:23-25; 209:1-5). Based on Mr. Knowlton's past experience with individuals terminated form (sic) Bankers Life, Mr. Knowlton believes that Messrs. Buckley and Valdez continued to repeat the statements that he was incompetent and dishonest to other (sic) after July 2007.

*Pl.'s Resp. to Def.'s Statement of Material Fact* ¶ 54 (Docket # 62) (PRDSMF). The Plaintiff's response makes no sense. The Court could hold the Plaintiff to his non-responsive answer, accept his admission, and conclude that Bankers Life made no misrepresentation. However, rather than hold the Plaintiff to an obvious mistake, the Court has resolved to dig deeper.

To determine what to make of Bankers Life's assertion, the Court reviewed the Bankers Life record citation: Mr. Knowlton's deposition, Exhibit F page 152. DSMF ¶ 54. During his July 29, 2010 deposition, counsel for Bankers Life pointed to the allegation in paragraph 154 of his Complaint, which alleged that Mr. Buckley told him that Bankers Life had a great opportunity for him in Massachusetts to build a branch office on the North Shore, and asked Mr. Knowlton: "What's false about that statement?" DSMF Ex. F 151:24-25; 152:1-3 (*Dep. of Alan Knowlton*). After some equivocation, Mr. Knowlton responded: "There's nothing -- nothing false about that statement. That was the statement he made to me that primarily motivated me to go to Massachusetts." *Id.* at 152:7-9. He was asked again whether there was "anything untrue about that statement" and responded, "No." *Id.* at 152:18-19.

7

These answers are problematical for Mr. Knowlton since they strike at the very heart of his contentions about the North Shore job offer.[2] If Mr. Buckley's statements about the North Shore opportunity were true, they can hardly form the basis for a misrepresentation claim. But Mr. Knowlton's admissions jar with the rest of his case against Bankers Life. Elsewhere he says that Bankers Life promised him a Branch Manager position on the North Shore, that he agreed to accept a demotion to Unit Sales Manager on a temporary basis on the promise that Bankers Life needed a little time to set up the North Shore office, that he performed reasonably well as a Unit Sales Manager, that Bankers Life never raised performance issues with him, that Bankers Life never made him Branch Manager, that during this time, Bankers Life supervisors continually disparaged him behind his back, and that Bankers Life, which had not made him a Branch Manager as promised, effectively forced him out by cutting his salary because he was not a Branch Manager. PRSMF ¶¶ 100, 109-18, 125-26.

Unaided by any explanation from Mr. Knowlton, the Court does not know what to make of the stark contrast between Mr. Knowlton's admission that the Buckley statement was true and the entire rest of his argument. It is possible that Mr. Knowlton understood the question to ask whether it was true that Mr. Buckley made the statement, rather than whether the Buckley statement was true. The difference between the accuracy and truth of a statement sometimes eludes witnesses. This is suggested at least by his response that "[t]hat was the statement

---

[2] That Mr. Knowlton's counsel has never made even a passing reference to this apparent admission is distinctly unhelpful.

he made to me that primarily motivated me to go to Massachusetts." Here, viewing the evidence in the light most favorable to Mr. Knowlton, the Court will not conclude that Mr. Knowlton's admission effectively waives his misrepresentation claim against Bankers Life.

In sum, analyzing Mr. Buckley's statement under *Plaut* in the manner the Defendants demand, the result is the same. Viewing his statement as an integral part of Bankers Life's plot against Mr. Knowlton, Mr. Buckley's promise of a "great opportunity" to build a branch office on the North Shore was neither innocuous puffery nor true; it was cynically intended as a first step in a deliberate process to remove Mr. Knowlton from the state of Maine, to place him in a disadvantageous position in Massachusetts, and to terminate him once he failed to perform an impossible and fictitious assignment. None of this is to say that a jury will agree with Mr. Knowlton's version of these hotly contested facts. But it is to reiterate that Mr. Knowlton has presented sufficient evidence to create a jury question on this and other factual issues. *See Rand v. Bath Iron Works*, 2003 ME 122, ¶13, 832 A.2d 771, 775 (stating that whether a misrepresentation has been made "is a question for the fact-finder").

## II. PUNITIVE DAMAGES

In its motion for reconsideration, the Defendants re-emphasize to the Court the familiar standard for punitive damages under Maine law:

> Under Maine law, malice may be implied *only if* the plaintiff presents *"clear and convincing evidence"* that the defendant acted in a manner *"so outrageous* that malice toward a person injured as a result of that conduct can be implied."

9

*Defs.' Mot. for Recons.* at 3 (quoting *Galarneau v. Merrill, Lynch, Pierce, Fenner & Smith*, 504 F.3d 189, 204 (1st Cir. 2007) (emphasis added in Defendants' motion)). Bankers Life relies heavily on *Galarneau* which it says is a case "very analogous to the present one." *Id.*

In *Galarneau*, the First Circuit overturned a punitive damages award against a brokerage firm which had filed a form with the National Association of Securities Dealers called a U-5 that it knew contained false information about the plaintiff and the events that led to her termination. *Galarneau*, 504 F.3d at 192, 204-05. What differentiates this case from *Galarneau*, however, is that in *Galarneau*, the First Circuit concluded there was "no evidence that Merrill Lynch made the statement in the U-5 with the intent to deprive Galarneau of a job." *Id.* at 205.

Here, the situation is markedly different. Viewing Mr. Knowlton's case from his perspective, he has demonstrated that Bankers Life acted intentionally in setting about to destroy him in order to save itself from Maine regulators. Mr. Knowlton has plausibly alleged that Bankers Life engaged in an elaborate conspiracy, involving lies to him about what it was saying to state officials, lies to the state officials about Mr. Knowlton, lies to him about the restrictions the state officials had imposed on him, lies to him about a non-existent job in Massachusetts, lies to others about his competence and honesty, and lies to him about his performance as an employee both in Maine and Massachusetts. Mr. Knowlton has presented sufficient evidence to create a jury question as to whether Bankers Life did in fact engage in this multi-layered course of deception to save Bankers Life's

10

skin in Maine by easing him out of state and forcing his resignation in order to rid itself of the inconvenience of his continued employment. If the jury concludes that Mr. Knowlton has made out this case, it seems beyond argument that Bankers Life's conduct fits well within the Maine standard for the imposition of punitive damages. The question here is not whether Mr. Knowlton will be successful in proving his claims but whether he should be allowed to present them to a jury. The Court concludes, once again, that he should.

## III. LOCAL RULE 56

The Defendants claim that the Court misapplied its own local rule when it refused to consider additional statements of material fact that they submitted with their reply statement of material fact. *Def.'s Mot. for Recons.* at 3 n.1. Here, the Defendants filed a statement of material facts in support of their motion, consisting of fifty-eight paragraphs, and the Plaintiff responded with seventy-two paragraphs of his own. The Defendants then replied to the Plaintiff's response but added six new facts. The Plaintiff did not respond to the new facts because there is no provision in the Rule for a sur-reply. Applying Local Rule 56 and noting that "by the time of the reply, everything that should have been said, has been said," the Court refused to accept the Defendants' last set of facts. *Order* at 44 n.4.

Surprisingly, despite the Court's ruling, the Defendants insist that "these facts fall squarely within Rule 56(d) and should be considered by the Court." *Defs.' Mot. for Recons.* at 3 n.1. They say that Local Rule 56(d) "permits parties to submit a reply statement of material facts that is 'limited to any additional facts submitted

11

by the opposing party.'" *Id.* Citing no legal authority other than their own interpretation of a portion of the language of Local Rule 56(d), they maintain that they were only filing a statement permitted by the Local Rules.

The Defendants are flat-out wrong. The full text of Local Rule 56(d) reads:

> A party replying to the opposition to a motion for summary judgment shall submit with its reply a separate, short, and concise statement of material facts which shall be limited to any additional facts submitted by the opposing party. The reply statement shall admit, deny or qualify such additional facts by reference to the numbered paragraphs of the opposing party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by subsection (f) of this rule. Each such reply statement shall begin with the designation "Admitted," "Denied," or "Qualified" and, in the case of an admission, shall end with such designation.

D. ME. LOC. R. 56(d). The clear language of Local Rule 56(d) requires the movant to limit its reply statement to admitting, denying or qualifying the responsive statement. It does not allow the movant to add new facts at this late stage.

The overall rationale of the rule is clear: there must be an end point. The Rule requires the movant for summary judgment to set forth those undisputed facts it contends entitle it to summary judgment; it permits the non-movant to put into play any facts, which the non-movant contends require trial. Finally, it permits the movant to respond to the non-movant's facts. But the Rule does not permit the movant to add yet another set of facts. If the movant were allowed to posit new facts in its reply, the movant's final document would be an unanswered set of factual assertions, which would run contrary to the requirement that the facts must

be interpreted in a manner most congenial to the non-movant. In other words, if the rule were interpreted in the Defendants' fashion, to comply with Rule 56, the Local Rule would have to permit the non-movant to sur-reply. However there is no provision in the local rule for the non-movant to file a sur-reply precisely because the movant is not allowed to posit a new set of facts with its reply statement. Finally, movants would be encouraged to hide their most salient statements of fact until the very end of the point-counterpoint process so that there would be no counter to their final point.

The Court emphatically rejects the Defendants' contention as contrary to the express language of the local rule, contrary to the design of the local rule, and contrary to the local rule's implementation of Federal Rule 56. Its prior ruling on the Defendants' unauthorized set of new facts stands.

## IV. CONCLUSION

The Court DENIES the Defendants' Motion for Reconsideration of Motion for Summary Judgment Ruling (Docket # 69).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of August, 2011